Jerry Lewis **FOWLER**, Plaintiff,

v.

Park J. **ANDERSON**, Warden, Oklahoma
State Penitentiary, et al.,
Defendants.

Jerry Lewis **FOWLER**, Plaintiff,

v.

Park J. **ANDERSON**, Warden, Oklahoma
State Penitentiary, et al.,
Defendants.

**Nos. 73–79 and 73–207 Civil.**

United States District Court,
E. D. Oklahoma,
Civil Division.

Feb. 13, 1974.

Jerry Lewis Fowler, pro se.

Paul Crowe, Oklahoma City, Okl., for all defendants except Anderson.

Willard M. Gotcher, McAlester, Okl., for Anderson.

## MEMORANDUM OPINION

DAUGHERTY, Chief Judge.

Plaintiff, an inmate in the Oklahoma State Penitentiary, has brought these actions under the Civil Rights Act, 42 U.S.C. § 1983 against Defendants Park J. Anderson, former Warden of the Oklahoma State Penitentiary, Governor David Hall, Governor of the State of Oklahoma, Attorney General Larry Derryberry, Attorney General for the State of Oklahoma, Leo McCracken, former Director of the Oklahoma Department of Corrections, Dr. Kato, Oklahoma State Penitentiary, Captain George Black, Oklahoma State Penitentiary and Jack Cowens, Oklahoma State Penitentiary, and Sam C. Johnston, Deputy Warden, Oklahoma State Penitentiary, complaining that under color of State law each of said Defendants deprived Plaintiff of certain of his civil rights in connection with his confinement as a prisoner in said institution.

Plaintiff claimed that he has been denied proper medical attention; that certain of his personal property has been confiscated and destroyed; that tear gas has been used against him; that he has been subjected to cruel and unusual punishment with reference to the conditions of his confinement as an inmate in the maximum security portion of the prison; that he has been placed in maximum security without a charge being made against him; that racial segregation has been practiced against him; that his mail has been improperly handled; and the prison Disciplinary Court is unconstitutional.

Plaintiff seeks relief herein in the form of $1,500,000.00 damages plus $100.00 per day in damages for each day he has spent in maximum security; that the Court order his release from maximum security; that his punishment record be expunged; that he be restored good time and work time credits which have been taken from him by reason of his confinement in maximum security and that the Court order him trans-

ferred from State custody to Federal custody.

The Defendants have answered the Complaints denying the allegations thereof. The Court has conducted an evidentiary hearing. The State of Oklahoma has voluntarily produced the Plaintiff in open Court so that he may testify regarding his Complaints and also produced on Plaintiff's request one prison guard who testified as a witness at the call of Plaintiff.

On the evidence presented to the Court the following findings of fact and conclusions of law and decision are made herein:

■ (1) Plaintiff's complaint that he has received improper medical and/or dental attention is not in any way supported by the record. The evidence reveals that Plaintiff had the flu for which he was seen by a doctor who prescribed antibiotics and Plaintiff has recovered from the flu. Plaintiff complained to the officer in charge about being sick. This information was promptly forwarded and the Plaintiff was seen by a doctor the next day following which Plaintiff was given medication. Plaintiff's complaint about a back condition resulted in being seen by a doctor who prescribed certain exercises for the same. One medical doctor at the prison testified that the Plaintiff had been seen by him on two occasions and that Plaintiff has been seen by three prison doctors. Evidence was also introduced that Plaintiff refused to take medication prescribed for him by a prison doctor. Further evidence was introduced that Plaintiff had been seen a total of twenty-two times by prison medical personnel since October of 1973 until the present time. Plaintiff has been seen twice by a prison dentist, the last time only Friday of last week. While he needs further attention to his teeth in the nature of possible extractions or fillings, the same will be attended to in due course in the near future according to the testimony of the dentist. It is ob-

vious that Plaintiff is receiving adequate medical attention under the requirements of Coppinger v. Townsend, 398 F.2d 392 (Tenth Cir. 1969) and 51 A.L.R.3d 111 at page 179, and there is an absence of any evidence that any of the Defendants violating any of Plaintiff's constitutional rights in this regard. In this connection it is worthy to note that in the July, 1973 riot at the Penitentiary, the inmates burned down the hospital including all medical records and equipment and in the meantime the medical staff is performing medical services to the best of their ability utilizing temporary facilities and equipment. Coppinger v. Townsend, *supra*.

■ (2) The Plaintiff complained about confiscation and destruction of certain of his personal property but did not name any person as the one responsible for such confiscation and destruction. Thus, there is no evidence that any of the Defendants in either of the consolidated cases confiscated or destroyed any of Plaintiff's personal property. It is the general rule that an official will not be liable in a Civil Rights action unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges, and immunities secured him by the Federal Constitution. Richardson v. Snow, 340 F.Supp. 1261 (D.Md.1972). It is an essential element of a Civil Rights claim that the particular defendant be personally involved in the alleged denial of the Constitutional right. Battle v. Lawson, 352 F.Supp. 156 (W.D.Okl.1972). Townes v. Swenson, 349 F.Supp. 1246 (W.D.Mo.1972); Campbell v. Anderson, 335 F.Supp. 483 (D.Del.1971).

■■ (3) Plaintiff complains about being subjected to tear gas. From the evidence it is revealed that no one, let alone a Defendant, has ever directly utilized tear gas against Plaintiff. However, tear gas used in his vicinity, which under the evidence the Court finds to have been a proper utilization of tear

gas,[1] may have drifted into Plaintiff's cell. The Plaintiff identified no Defendant as shooting him with tear gas nor did he identify any of the Defendants as being the officer who used tear gas nearby to cause an unruly prisoner to remove himself from his cell in obedience to a lawful order of an official of the institution. Again, it is the general rule that an official will not be liable in a Civil Rights action unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges, and immunities secured him by the Federal Constitution. Richardson v. Snow, 340 F.Supp. 1261 (D.Md.1972). It is an essential element of a Civil Rights claim that the particular defendant be personally involved in the alleged denial of the Constitutional right. Battle v. Lawson, 352 F.Supp. 156 (W.D.Okl.1972). Townes v. Swenson, 349 F.Supp. 1246 (W.D.Mo.1972); Campbell v. Anderson, 335 F.Supp. 483 (D.Del.1971).

■ (4) Plaintiff's complaints about cell conditions in the maximum security portion of the prison are not supported by the evidence. The Court finds that the accommodations of such cells do not constitute a denial of Plaintiff's constitutional rights and do not constitute cruel and unusual punishment. Such cells are lighted, ventilated, contain a toilet, running water, wash basin, bunk, mattress and bedding, and are suitable and adequate for the intended purpose. Novac v. Beto, 453 F.2d 661 (Fifth Cir. 1971); Adams v. Pate, 445 F.2d 105 (Seventh Cir. 1971).

■■ (5) Plaintiff's complaint that he has been placed in maximum security without a charge being made against him is disproved by the evidence. On March 23, 1973 according to official records[2] of the prison, a misconduct report was lodged against the Plaintiff to the effect that at 3:00 p. m. on said date he would not put his tray and spoon on the run (from his cell). The officer in charge asked him to put it out, whereupon he said, "You people come in and get it, we are ready to get the 'Censored' on now." The report indicates that he threatened an officer. The report further revealed that this inmate has repeatedly disturbed other inmates and cursed officers on numerous occasions. Plaintiff's claim of being placed on maximum security without a charge being lodged against him in this instance is completely refuted by the testimony of officers involved and the official records of the prison. On an earlier occasion, namely, December 19, 1972 the Plaintiff was placed on maximum security and then administrative segregation for his own protection after being engaged in a fight with other inmates in the vicinity of the library of the institution. He was advised in writing of this step being taken for his own protection and safety, given the reasons why and Plaintiff gave no testimony of objecting thereto, nor does the record reveal any objections thereto being made by the Plaintiffs. The Court finds in these circumstances and under the evidence before the Court that the placement of Plaintiff in protection segregation was appropriate and for Plaintiff's own safety and protection and did not violate any of his constitutional rights in these circumstances. Again, it is the general rule that an official will not be liable in a Civil Rights action unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges, and immunities secured him by the Federal Constitution. Richardson v. Snow, 340

---

1. The use of mace or tear gas as a disciplinary measure does not amount to cruel and unusual punishment. Bethea v. Crouse, 417 F.2d 504 (Tenth Cir. 1969).

Beishir v. Swenson, 331 F.Supp. 1227 (W. D.Mo.1971) holds:

"Neither can it be said to be unreasonable to resort to the judicious use of mace to regain control and establish order after lesser means have failed."

2. Admitted under 28 U.S.C. § 1732; in People v. Lopez, 60 Cal.2d 223, 32 Cal.Rptr. 424, 384 P.2d 16 (1963), prison records were admitted as records kept in the ordinary course of business.

F.Supp. 1261 (D.Md.1972). It is an essential element of a Civil Rights claim that the particular defendant be personally involved in the alleged denial of the Constitutional right. Battle v. Lawson, 352 F.Supp. 156 (W.D.Okl.1972). Townes v. Swenson, 349 F.Supp. 1246 (W.D.Mo.1972); Campbell v. Anderson, 335 F.Supp. 483 (D.Del.1971).

 (6) Plaintiff's complaint of racial segregation being practiced against him is limited by his testimony to the fact that six blacks and eight whites were placed in maximum segregation at the same time and the eight whites were subsequently removed from maximum segregation, whereas Plaintiff remained therein. Plaintiff had no information as to why the eight whites were removed nor where they were placed. This evidence falls short of the practice of racial segregation by the Defendants as claimed by Plaintiff. The evidence reveals that the prison is integrated.

 (7) With reference to Plaintiff's mail, his complaint as testified to was that a letter or two mailed to his attorney was not received by his attorney according to hearsay evidence (he testified to what his attorney told him). Plaintiff was not able to testify as to who may have stopped his mail or why his letters were not received by his attorney and therefore Plaintiff's complaint in this respect must fail as to all of the Defendants. Again, it is the general rule that an official will not be liable in a Civil Rights action unless he directly and personally participates in conduct under color of state law which deprives the plaintiff of rights, privileges, and immunities secured him by the Federal Constitution. Richardson v. Snow, 340 F.Supp. 1261 (D.Md.1972). It is an essential element of a Civil Rights claim that the particular defendant be personally involved in the alleged denial of the Constitutional right. Battle v. Lawson, 352 F.Supp. 156 (W.D.Okl.1972). Townes v. Swenson, 349 F.Supp. 1246 (W.D.Mo.1972); Campbell v. Anderson, 335 F.Supp. 1483 (D.Del.1971). Denson v. United States, 424 F.2d 329 (Tenth Cir. 1970).

 (8) Plaintiff's complaint that the Prison Disciplinary Court is unconstitutional is without merit. The Plaintiff appeared in person before this court, the charge against him was read him, he denied the charge, he was given the opportunity to respond to the charge when according to the official records of the Penitentiary he said, "You said what you had to say, so do what you have to do, so let's go."[3] The disposition of his case by the Prison Disciplinary Court was confinement in maximum segregation with the notation that his attitude was belligerent and insolent.[4]

Plaintiff's evidence has utterly failed to show a deprivation of any of his constitutional rights by any of the Defendants. The Court finds and concludes the Plaintiff's civil rights have not been violated by the Defendants as claimed by Plaintiff and accordingly, Plaintiff's action should be dismissed and Judgment should be entered accordingly.

---

3. Actions of prison officials in disciplining inmates are not subject to judicial review in the absence of arbitrariness or caprice. Graham v. Willingham, 384 F.2d 367 (Tenth Cir. 1967); Rivera v. Toft, 477 F.2d 534 (Tenth Cir. 1973).

4. In Adams v. Pate, 445 F.2d 105 (Seventh Cir. 1971) it is held:
"The usual institutional procedure is that prior to the imposition of confinement in segregation, the prisoner is to be taken before the Disciplinary Captain for a hearing and determination of guilt or innocence, and if found guilty, to have him designate the punishment. It thus appears that the prisoner is confronted with the accusation against him and afforded a reasonable opportunity to deny the accusation or explain his actions. In the context of the nature of the administration action here involved, this would appear to fairly and rationally satisfy the concept of procedural due process. Sostre v. McGinnis, supra." [442 F.2d 178, (Second Cir. 1971)]